## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF FLORIDA
#### Tallahassee Division

| | | |
|---|---|---|
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA 1100 Fifteenth Street, N.W. Washington, DC 20005 | * * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. _____ 4:01cv 356-WS |
| RHONDA M. MEDOWS, in her official capacity as Secretary of the Agency for Health Care Administration of the State of Florida, and BOB SHARPE, in his official capacity as Deputy Secretary of Medicaid, Agency for Health Care Administration of the State of Florida, 2727 Mahan Drive, MS #1 Tallahassee, Florida 32308 | * * * * * * * * * | |
| Defendants. | * * | |

*     *     *     *     *     *     *     *

## COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF

Plaintiff, Pharmaceutical Research and Manufacturers of America ("PhRMA"),

by its undersigned attorneys, states in support of this Complaint as follows:

### INTRODUCTION

1.      Plaintiff PhRMA challenges provisions of a recently enacted Florida law

establishing a state Medicaid drug formulary and requiring drug manufacturers to pay

supplemental rebates in order to have their drugs included in the formulary.

OFFICE OF FILED CLK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
TALLAHASSEE, FLA.

01 AUG -7  AM 10: 05

KB

FILED

1

2.      The challenged provisions, ss. 409.91195 and 409.912, Florida Statutes (as amended by Chapter 2001-104 of the Laws of Florida) ("the State Medicaid Formulary Law"), were enacted on May 31, 2001 and took effect on July 1, 2001. The challenged provisions conflict with Section 1927 of the Social Security Act ("SSA"), 42 U.S.C. § 1396r-8, and are therefore invalid.

3.      Under the State Medicaid Formulary Law, Florida will automatically cover the cost of any drug dispensed to a Medicaid beneficiary only if the drug is included in its new "formulary," which is simply a list of covered drugs. If a drug is not included in the formulary, Florida will cover its cost to a Medicaid beneficiary only if the physician has obtained "prior authorization" from the state to prescribe the drug to the particular patient. The physician must obtain such prior authorization each time the physician seeks to prescribe that drug to that patient. The purpose of this requirement is to encourage physicians to switch their patients to drugs that do not require prior authorization. The effect is to curtail sales of drugs that require prior authorization and to reduce patient access to such drugs.

4.      As Defendant Sharpe has explained, the goal of the State Medicaid Formulary Law is to help offset a reduction in Florida's Medicaid drug budget. Transcript of Pharmaceutical Manufacturers Formulary and Supplemental Rebate Briefing, May 31, 2001 ("May 31 Briefing Tr."), at 8; Transcript of June 26, 2001, Meeting of P&T Committee ("June 26 P&T Committee Meeting Tr."), at 4. The new law seeks to achieve this goal by requiring the manufacturer to provide "supplemental" price rebates—beyond those currently paid by the manufacturers under rebate agreements with the federal government—as a condition for inclusion in the formulary created by the new

2

law. The threat of exclusion from the new formulary, and the resulting curtailment of a manufacturer's sales to Medicaid beneficiaries, are the means by which the State Medicaid Formulary Law seeks to coerce manufacturers to pay such supplemental rebates by manufacturers.

5.    The State Medicaid Formulary Law is invalid under the Supremacy Clause and 42 U.S.C. § 1983 because, as discussed below, the formulary it creates violates in two key respects the mandatory formulary requirements established by federal law, SSA § 1927(d)(4), and because, on information and belief, Defendants have entered into and are moving to enter into rebate agreements with manufacturers without having obtained authorization to do so from the Secretary of the U.S. Department of Health and Human Services ("HHS") as required by SSA § 1927(a)(1).

6.    When the State Medicaid Formulary Law became effective on July 1, 2001, Plaintiff's members—prescription drug manufacturers—began suffering irreparable injury, pursuant to this law, because either (1) their drugs were unlawfully excluded from the new Medicaid formulary and became subject to prior authorization, thereby curtailing sales of their drugs to Medicaid beneficiaries in Florida; or (2) the manufacturers were unlawfully forced to enter into rebate agreements with Florida in order to be considered for inclusion in the new Medicaid formulary. Because the 11th Amendment bars damage actions against Florida, Plaintiff's members have no remedy at law.

**PARTIES**

7.    Plaintiff, PhRMA, is a non-profit corporation, organized and existing under the laws of the State of Delaware.

3

8.     PhRMA represents the country's leading research-based pharmaceutical and biotechnology companies, which are devoted to inventing medicines that allow patients to lead longer, healthier, and more productive lives.   PhRMA's member companies account for more than 75 percent of brand-name drug sales in the United States.

9.     PhRMA serves as the pharmaceutical industry's principal policy advocate, representing its members' interests in matters before Congress, the Executive Branch, state regulatory agencies and legislatures, and the courts.  PhRMA is committed to, *inter alia*, advancing public policies that foster continued innovation, educating the public about the drug development and discovery process, and promoting a fair and competitive marketplace.   PhRMA has represented its members in connection with the Florida Legislature's consideration of legislation regulating prescription drugs, including the legislation challenged in this action.

10.     PhRMA brings this suit on behalf of its members.  PhRMA's  members participate in the Medicaid program and therefore possess standing to sue in their own right.   Moreover, for the reasons stated in paragraph 5 above, PhRMA's members are suffering and will continue to suffer injury as a result of the new Florida law.   Neither the claims asserted nor the relief demanded necessitates the participation of individual PhRMA members.

11.     Defendant Rhonda M. Medows is sued in her official capacity as the Secretary of the Agency for Health Care Administration of the State of Florida ("AHCA").   The Secretary is responsible for implementing and enforcing the State

4

Medicaid Formulary Law.  Upon information and belief, Defendant Medows resides in this judicial district by maintaining an office here.

12.     Defendant Bob Sharpe is sued in his official capacity as Deputy Secretary of Medicaid, AHCA.  The Deputy Secretary is also responsible for implementing and enforcing the State Medicaid Formulary Law.  Upon information and belief, Defendant Sharpe resides in this judicial district by maintaining an office here.

## JURISDICTION

13.     This action arises under the Constitution of the United States and under 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 1983.  This Court has jurisdiction of this action under 28 U.S.C. § 1331.

## VENUE

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because, on information and belief, Defendants reside in this judicial district, and a substantial portion of the events giving rise to this action occurred therein.

## THE FEDERAL MEDICAID PROGRAM

15.     Established by Congress in 1965, Medicaid is a federal-state program to provide medical assistance for the needy, governed by the terms of title XIX of the Social Security Act, SSA §§ 1901-1935, 42 U.S.C. §§ 1396-1396v.  Every state, including Florida, currently participates in Medicaid and has its own Medicaid program.

16.     Medicaid is administered and funded jointly by the federal and state governments: state Medicaid agencies directly reimburse health care providers for covered services to beneficiaries, and the federal government then funds a share of these expenditures.  The federal government currently pays more than half of Florida's

Medicaid costs—56.62 percent in this fiscal year and 56.43 percent in the fiscal year beginning October 31, 2001. Responsibility for Medicaid at the federal level rests with the U.S. Centers for Medicare and Medicaid Services ("CMS") (formerly the U.S. Health Care Financing Administration), an agency within HHS.

### Medicaid Rebate Agreements

17.    In the Omnibus Budget Reconciliation Act of 1990 ("OBRA 90"), Congress prohibited states from maintaining restrictive drug formularies, which had limited patient access to prescription drugs under the Medicaid program. At the same time, Congress offered drug manufacturers a *quid pro quo*—federal law would require the states to cover all of a manufacturer's drugs if the manufacturer entered into rebate agreements with the Secretary of HHS or a state (if the Secretary had authorized the state to enter into such agreements with a manufacturer) pursuant to a new SSA § 1927(a)(1), 42 U.S.C. § 1927(a)(1). *See* SSA § 1903(i)(10), 42 U.S.C. § 1396b(i)(10). Under this arrangement, everyone's interests—those of the patient, those of the federal and state governments, and those of the drug manufacturers—would be protected and preserved.

18.    The amount of the rebate a manufacturer must pay under an agreement with the Secretary is governed by SSA § 1927(c), 42 U.S.C. § 1396r-8(c). The rebate, which is calculated on a drug-by-drug basis, is the product of the number of units of the drug dispensed in the state and the greater of (1) 15.1 percent of the average manufacturer price and (2) the difference between the average manufacturer price and the manufacturer's nationwide "best price." Thus, if a manufacturer's nationwide "best price" for a drug is more than 15.1 percent less than the average price the manufacturer charges for the drug, the required rebate is the difference between the average

manufacturer price and the best price. Otherwise, the required rebate is 15.1 percent of the average manufacturer price.

19.     A rebate agreement under SSA § 1927(a)(1) is effective for an initial period of not less than one year and is automatically renewed for a period of one year, SSA § 1927(b)(4)(A), except that the Secretary may provide for termination of a rebate agreement with 60 days' notice for violation of the requirements of the agreement or other good cause shown, *id.* § 1927(b)(4)(B)(i), and the manufacturer may terminate a rebate agreement with 60 days' notice for any reason, *id.* § 1927(b)(4)(B)(ii).

### State Medicaid Formularies

20.     In the Omnibus Budget Reconciliation Act of 1993 ("OBRA 93"), Congress amended SSA § 1927, authorizing the states once again to create formularies. In doing so, however, Congress took pains to prevent the states from undermining OBRA 90's guarantee of patient access to prescription drugs or the *quid pro quo* that OBRA 90 guaranteed drug manufacturers entering into rebate agreements under Section 1927(a)(1). SSA § 1927(d)(4), 42 U.S.C. § 1396r-8(d)(4), added by OBRA 93, specifies that a state "may" establish a formulary if the formulary meets the following requirements:

21.     **The formulary must be developed by a specially composed committee or board.** The formulary must be developed either by (1) a committee consisting of physicians, pharmacists, and other appropriate individuals appointed by the governor or (2) at the state's option, a drug use review board established by the state under subsection (g). SSA § 1927(d)(4)(A).

22.     **The formulary must include all drugs covered by a rebate agreement.** Except as provided in SSA § 1927(d)(4)(C), the formulary must include all covered

outpatient drugs of any manufacturer that has entered into and complies with a rebate agreement under SSA § 1927(a).  SSA § 1927(d)(4)(B).

23.     **The formulary may exclude a drug covered by a rebate agreement** *only* **on the formulary committee's written determination of no "significant, clinically meaningful therapeutic advantage" with respect to a specific disease or condition over alternative drugs included in the formulary.**  A covered drug may be excluded from the formulary with respect to the treatment of a specific disease or condition for an identified population (if any) *only* if the formulary committee has determined that the excluded drug does not have "a significant, clinically meaningful therapeutic advantage in terms of safety, effectiveness, or clinical outcome of such treatment for such population over other drugs included in the formulary and there is a written explanation (available to the public) of the basis for the exclusion."  SSA § 1927(d)(4)(C).

24.     In addition, for any drug excluded from the formulary pursuant to the foregoing standard, the state must permit coverage pursuant to a prior authorization program that meets requirements set forth in paragraph (5) of subsection (d).  SSA § 1927(d)(4)(D).

### THE FLORIDA STATE MEDICAID FORMULARY LAW

25.     On May 31, 2001, Florida enacted legislation that, among other things, includes the State Medicaid Formulary Law, which became effective on July 1, 2001.

### Creation of a State Medicaid Formulary

26.     The State Medicaid Formulary Law contemplates and provides for the establishment of a state Medicaid formulary under SSA § 1927(d)(4), 42 U.S.C. § 1396r-

8(d)(4). In particular, it authorized AHCA to "establish a preferred drug formulary in accordance with 42 U.S.C. s. 1396r" (§ 409.912(37)(a)(7)); it created "a Medicaid Pharmaceutical and Therapeutics ["P&T"] Committee within [AHCA] for the purpose of developing a preferred drug formulary pursuant to 42 U.S.C. s. 1396r-8" (§ 409.91195); it specified that the new P&T Committee "shall be comprised as specified in 42 U.S.C. s. 1396r-8" (§ 409.91195(1)); and it directed that, upon recommendation of the new P&T Committee, AHCA "shall adopt [the] preferred drug list" (§ 409.91195(4)).

### Prior Authorization Requirement

27. The State Medicaid Formulary Law specifies that "reimbursement of all drugs not included in the formulary"—other than mental health-related drugs, anti-retroviral drugs, and drugs for nursing home residents and other institutional residents—"is subject to prior authorization" (§ 409.91195(5)). The purpose of the "prior authorization" requirement for drugs excluded from the formulary is to encourage physicians to switch their patients to drugs that do not require prior authorization.

### Exclusion for Failure to Pay Supplemental Rebate

28. The State Medicaid Formulary Law, as Defendant Sharpe and other AHCA officials have recognized, contemplates that payment of a "supplemental rebate" will be a precondition for including a manufacturer's drugs in the formulary. The supplemental rebate must be sufficient to raise the combined federal and state rebates to at least 25 percent of the average manufacturer price (s. 409.912(a)(37)(7)).

29. Thus, the statute itself directs the P&T Committee to ensure that manufacturers agreeing to pay the supplemental rebate shall "have an opportunity to present evidence" supporting inclusion of their drugs in the formulary (s. 409.91195(7)).

Similarly, the statute states that a manufacturer's agreement to pay the supplemental rebate "will guarantee" the manufacturer that the P&T Committee will consider its drugs for inclusion in the formulary (s. 409.912(a)(37)(7)).  AHCA is to decide whether to include the drug of a manufacturer that has agreed to pay the supplemental rebate based on "the clinical efficacy of [the] drug and recommendations of the [P&T] Committee, as well as the price of competing products minus federal and state rebates" (*id.*).

30.     The import of these provisions, as Defendant Sharpe and other AHCA officials have recognized, is that a drug will not even be considered for inclusion in the formulary unless the manufacturer has agreed to make a total rebate payment to Florida of at least 25 percent (s. 409.912(37)(a)(7))—the minimum 15.1 percent required by SSA § 1927(c), plus the additional 10 percent required by the State Medicaid Formulary Law. As Defendant Sharpe explained in a briefing to manufacturers on May 31, 2001, creation of the formulary and negotiation of the supplemental rebates are "tied together."  May 31 AHCA Briefing Tr. 16.  Defendant Sharpe explained:

> "For inclusion in the formulary, the law says a manufacturer has to meet that 10 percent add-on requirement to be considered.  Now, if a manufacturer doesn't propose an additional rebate but is already at that level, their products could be considered.  But if they were below, if they were at the federal rebate minimum level, for example, they would not meet the legislative test in terms of that 10 percent add-on." *Id.* at 64-65.

31.     When asked to confirm that if a manufacturer refused to pay the supplemental rebate, "it wouldn't matter" whether a drug "had an advantage" over a competitor's or "was a better drug or a safer drug," Defendant Sharpe responded, "That's my reading of the law." *Id.* at 65.

**The Interim Formulary and the Existing P&T Committee**

32.     Until a new P&T Committee conforming to the requirements of SSA § 1927(a)(4)(A) is appointed and AHCA has adopted the permanent Medicaid formulary based on the recommendations of that committee, the State Medicaid Formulary Law directs AHCA to "use" the existing Florida Voluntary Preferred Drug List ("VPDL"), *i.e.,* as an interim Medicaid formulary (s. 409.91195(8)).  For purposes of meeting the July 1, 2001, effective date of the law, AHCA, as directed by the new law, relied on the existing P&T Committee to consider additions to and deletions from the VPDL.  As Defendant Sharpe has acknowledged, however, the VPDL "was not intended to serve as a formulary." May 31 AHCA Briefing Tr. 11. Nevertheless, as another AHCA official stated, the VPDL was to become "the working formulary" on July 1 (*id.* at 22) (George Kitchens, Bureau Chief, Medicaid Pharmaceutical Services, AHCA).

33.     The VPDL was created by an existing P&T Committee appointed pursuant to s. 409.91195(1), Florida Statutes, before that provision was amended by Chapter 2001-104 of the Laws of Florida.  It is not comprised as specified in SSA § 1927(d)(4)(A). Specifically, rather than all having been appointed by the Governor, some of the existing P&T Committee members were appointed pursuant to that provision by the Speaker of the House or the President of the Senate.  As Defendant Sharpe stated, the existing P&T Committee "is not exactly in compliance with the federal requirements for the P&T Committee that the State has to have to operate the restricted formulary." May 31 AHCA Briefing Tr. 9; *see also* June 26 P&T Committee Meeting Tr. 5 (Sharpe) ("we are required by statute to restructure our P&T committee to conform to the requirements of federal law which is somewhat different from our current committee").

34.     On June 25, 2001, AHCA forwarded to the existing P&T Committee for its consideration a proposed revised VPDL prepared by Provider Synergies, an agency contractor.  The next day, on June 26, 2001, the existing P&T Committee met to discuss the proposed revised VPDL, and to make recommendations to AHCA concerning the interim formulary.  At that meeting, various members of the Committee expressed concern that particular drugs had been excluded from the proposed revised VPDL even though those drugs had therapeutic advantages over other drugs that were included in the proposed revised VPDL.  *See* June 26 P&T Committee Meeting Tr. 33-34, 40, 63, 71.

35.     Defendant Sharpe stressed, however, that the State Medicaid Formulary Law "set a threshold . . . that for a drug even to be considered for inclusion in the Medicaid drug formulary we had to be getting a combined federal and state rebate from the manufacturer that is at least 25 percent of the average manufacturer price."  June 26 P&T Committee Meeting Tr. 3-4.  He stated that "manufacturers had to meet the threshold test on the 25 percent or we couldn't include them," adding that "no matter how much we would like to include a product, if they didn't meet the test of the law we can't."  *Id.* at 65-66; *see also id.* at 66  ("they had to meet the test of the law to be considered").  Thus, with "a few rare exceptions," Dr. Kitchens stated, if manufacturers "didn't meet those minimum standards of a supplemental and federal rebate, . . . pretty much they were eliminated from the formulary."  *Id.* at 10.

36.     Following the June 26 meeting of the old P&T Committee, AHCA finalized the interim formulary and posted it on the agency's website on July 10, 2001.  Although 1827 prescription drugs are covered by manufacturer rebates with the Secretary of HHS, the interim Florida formulary includes only 821 prescription drugs—just 44.9

percent of the drugs covered by federal rebate agreements.  Apart from the "rare exceptions" mentioned by Dr. Kitchens, it excludes all drugs as to which the manufacturer did not agree to pay a sufficient supplemental rebate—including 1006 drugs covered by rebate agreements with the Secretary of HHS, or 55.1 percent of all such drugs.  AHCA did not provide written determinations pursuant to SSA § 1927(d)(4)(C) justifying the exclusion of any drugs covered by rebate agreements with the Secretary of HHS.  As noted, drugs excluded from the interim State Medicaid Formulary are subject to prior authorization.

**Implementation Timeline**

37.    Implementation of the State Medicaid Formulary Law has been proceeding in two phases.

38.    Phase I (June 1 through June 30).  Manufacturers were required to submit their rebate proposals to Provider Synergies, a contractor of AHCA, between June 5 and June 12.  May 31 AHCA Briefing Tr., Slide 26.  Between June 7 and June 21, those proposals were reviewed and initial recommendations made for inclusion or exclusion from the interim formulary.  As noted, AHCA presented the proposed interim formulary to the exiting P&T Committee on June 25, 2001, and the P&T Committee met to review the proposed interim formulary on June 26, 2001.  AHCA thereafter finalized the interim formulary, which became effective on July 1, 2001, and posted the interim formulary on the agency's website on July 10, 2001.

39.    Phase II (beginning July 1).  The permanent P&T Committee was to be appointed during July and clinical reviews for "participating manufacturers" were to begin for purposes of developing the permanent formulary (*id.,* Slide 32).  The P&T

Committee will meet monthly beginning August 1, 2001, to review therapeutic categories, and quarterly beginning January 2, 2002 (*id.*). It will begin phasing in the permanent State Medicaid Formulary as it completes its review of the various therapeutic categories, but it is unknown at this time when the "interim" formulary will be entirely superseded. During this period rebate negotiations are to continue (*id.*, Slide 17). As described above, payment of a supplemental rebate is a prerequisite for consideration for inclusion in the permanent formulary.

40.     On information and belief, Florida has not obtained authorization from the Secretary of HHS (through CMS) to enter into rebate agreements with any manufacturer.

**COUNT I**
**Supremacy Clause: Unlawful Exclusion from**
**Interim and Permanent Medicaid Formularies**

41.     Paragraphs 1-39 are incorporated by reference.

42.     The Supremacy Clause prohibits state laws that conflict with federal laws.

43.     SSA § 1927(d)(4)(B), 42 U.S.C. § 1396r-8(d)(4)(B), requires that *all* drugs covered by a rebate agreement under SSA § 1927(a)(1), 42 U.S.C. § 1396r-8(a)(1), including rebate agreements with the Secretary of HHS, be included in any formulary established by a state under SSA § 1927, and permits such a drug to be excluded from such a formulary *only* if the state formulary committee established under SSA § 1927(d)(4)(A), 42 U.S.C. § 1396r-8(d)(4)(A), has first made a written determination (available to the public) that the drug lacks a significant, clinically meaningful therapeutic advantage over other drugs included in the formulary with respect to the specific disease or condition, SSA § 1972(d)(4)(C), 42 U.S.C. § 1396r-8(d)(4)(C).

44.     The State Medicaid Formulary Law, however, excludes from the interim and permanent formularies drugs covered by rebate agreements with the Secretary of HHS under SSA § 1927(a)(1), 42 U.S.C. § 1396r-8(a)(1), based on the manufacturer's refusal to pay the supplemental rebate, and in the absence of the written determination of no significant, clinically meaningful therapeutic advantage required by SSA § 1927(d)(4)(C), 42 U.S.C. § 1396r-8(d)(4)(C), by a state formulary committee established under SSA § 1927(d)(4)(A).

45.     The State Medicaid Formulary Law conflicts with SSA § 1927(d)(4), 42 U.S.C. § 1396r-8(d)(4), and is therefore preempted.

46.     Plaintiff has no adequate remedy at law.

## COUNT II
### Supremacy Clause: Unlawful Interim Formulary

47.     Paragraphs 1-45 are incorporated by reference.

48.     The Supremacy Clause prohibits state laws that conflict with federal laws.

49.     SSA § 1927(d)(4)(A), 42 U.S.C. § 1396r-8(d)(4)(A), permits a state to establish a Medicaid formulary only if the formulary is developed by a committee consisting of physicians, pharmacists, and other appropriate individuals appointed by the Governor, or by a drug use review board established by the state pursuant to SSA § 1927(g), 42 U.S.C. § 1396r-8(g).

50.     The State Medicaid Formulary Law directed AHCA to use, as an interim Medicaid formulary, one developed by a body that is neither a committee comprised in accordance with SSA § 1927(d)(4)(A) nor a drug use review board established by the state under Section 1927(g).

51.     The State Medicaid Formulary Law conflicts with SSA § 1927(d)(4)(A), 42 U.S.C. § 1396r-8(d)(4)(A), and is therefore preempted.

52.     Plaintiff has no adequate remedy at law.

## COUNT III
### Supremacy Clause: Failure to Obtain the Secretary's Approval

53.     Paragraphs 1-51 are incorporated by reference.

54.     The Supremacy Clause prohibits actions by state officials that conflict with federal laws.

55.     SSA § 1927(a)(1), 42 U.S.C. § 1927(a)(1) permits a state to enter into rebate agreements with a manufacturer only if authorized to do so by the Secretary of HHS (through CMS).

56.     Defendants have moved to enter into rebate agreements with manufacturers without having first obtained authorization to do so from the Secretary of HHS (through CMS).

57.     Defendants are thereby acting in conflict with SSA § 1927(a)(1), 42 U.S.C. § 1396r-8(a)(1), and their actions are therefore preempted.

58.     Plaintiff has no adequate remedy at law.

## COUNT IV
### 42 U.S.C. § 1983

59.     Paragraphs 1-57 are incorporated by reference.

60.     As part of the *quid pro quo* with drug manufacturers established by Congress in the federal Medicaid statute, SSA § 1927(d)(4)(B) guarantees that a state Medicaid formulary established under SSA § 1927(d)(4) will include all of the drugs of a manufacturer that has entered into a rebate agreement under SSA § 1927(a)(1), unless a

state formulary committee established under SSA § 1927(d)(4)(A) has excluded the drug under the standard and by the means described in SSA § 1927(d)(4)(C); and the Medicaid statute further allows the states to enter into Medicaid rebate agreements with drug manufacturers only if authorized to do so by the Secretary of HHS under SSA § 1927(a)(1).

61.     By implementing and enforcing the challenged provisions, Defendants are thus depriving Plaintiff's members of rights under the federal Medicaid statute.

62.     Defendants are "persons" under 42 U.S.C. § 1983 who have acted under color of state law to deprive Plaintiff's members of rights secured by federal law.

63.     Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Pharmaceutical Research and Manufacturers of America, respectfully requests the following relief:

A.      A declaratory judgment, pursuant to 28 U.S.C. § 2201, that s. 409.91195 and s. 409.912, as amended by Chapter 2001-104 of the Laws of Florida, violate the federal Medicaid statute, 42 U.S.C. § 1983, and the Supremacy Clause of the United States Constitution and are null and void and unenforceable;

B.      A preliminary and permanent injunction enjoining the Defendants from implementing or enforcing s. 409.91195 and s. 409.912 with respect to the establishment of an interim or permanent state Medicaid drug formulary or the negotiation of supplemental rebate agreements with drug manufacturers, pending further order of this Court.

C.   An order awarding PhRMA's costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

D.   Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Robert W. Pass (Fla. Bar # 0183169)
Martha Harrell Chumbler (Fla. Bar #263222)
Carlton Fields, P.A.
215 South Monroe Street, Suite 500
Tallahassee, FL  3230-1190
(850) 224-1585
(850) 222-0398 (facsimile)

David H. Remes (*pro hac vice*)
Steven J. Rosenbaum (*pro hac vice*)
Laura B. Gasho
Keith A. Noreika
Covington & Burling
1201 Pennsylvania Avenue. N.W.
Washington, D.C.  20004
(202) 662-5212

*Attorneys for Plaintiff*
*Pharmaceutical Research and Manufacturers of America*

Dated: August 7, 2001

18